CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

MAY 16 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| BETTY PRITCHETTE, | ) |
| Plaintiff, | ) Civil Action No: 3:14cv00023 |
| v. | ) |
| | ) Jury Trial Demanded |
| RAPIDAN SERVICE AUTHORITY, | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Betty Pritchette, by counsel, and moves this Court for entry of judgment in her favor against Defendant Rapidan Service Authority, and in support of her Complaint states as follows:

### INTRODUCTION

1. Plaintiff Betty Pritchette brings this action against Defendant Rapidan Service Authority pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 Co. *et seq.*, for unlawful discrimination based on her sex, the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, for unlawful discrimination based on her disability, and the Virginia Workers' Compensation Act, Virginia Code § 65.2-100, *et seq.*, for unlawful retaliation.

### PARTIES

1. Plaintiff Betty Pritchette is a citizen and resident of the Commonwealth of Virginia and is a former employee of the Defendant Rapidan Service Authority.

2. Defendant Rapidan Service Authority is a public corporation formed and existing under the laws of the Commonwealth of Virginia, and maintains its principal place of business in Greene County, Virginia.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims in this action occurred in this District, and 28 U.S.C. § 1391(b)(1) in that Defendant is deemed a resident of this District pursuant to 28 U.S.C. § 1391(c).

## FACTUAL BACKGROUND

5. Plaintiff Betty Pritchette is a female and a former employee of the Defendant Rapidan Service Authority.

6. Plaintiff was employed by Defendant Rapidan Service Authority beginning on January 7, 2008 as a meter reader.

7. Throughout the duration of her employment with Rapidan Service Authority, Plaintiff's work performance was excellent. After working for only a couple of months, Defendant promoted Plaintiff to the maintenance department. Plaintiff was the only female employee working in the maintenance department.

8. On July 2, 2009, Plaintiff injured her back during the course of performing work for the Defendant. Plaintiff filed for and received Virginia Workers' Compensation benefits for this injury. After undergoing physical therapy, Plaintiff returned to work with

restrictions on or about September 3, 2009, and began work without restrictions on or about September 9, 2009.

9. Plaintiff experienced symptoms from her workplace back injury again in February or March of 2011, and was taken out of work by her physician in July, 2011. Plaintiff filed for and received Virginia Workers' Compensation benefits for this injury.

10. Plaintiff underwent successful back surgery on October 14, 2011, and returned to work in February, 2012. Plaintiff filed for and received Virginia Workers' Compensation benefits for this injury.

11. On May 21, 2012, Plaintiff aggravated her back injury during the course of performing work for the Defendant. Plaintiff's physician prescribed rest and took her out of work. Plaintiff's physician released Plaintiff to perform light duty work beginning on June 3, 2012, and work without restrictions beginning July 12, 2012. Defendant Rapidan Service Authority did not provide any light duty work to Plaintiff.

12. On or about May 31, 2012, Plaintiff notified her supervisor, Leo Davis, that her doctor had released her to return to work performing light duty beginning June 3, 2012, and to return to work without restrictions beginning July 12, 2012.

13. On July 6, 2012, Plaintiff received a letter from Defendant dated July 5, 2012 that terminated her employment. Plaintiff spoke with Defendant's Assistant General Manager Tim Clemons, and he stated that the Defendant could not hold her maintenance position open, and that she would need to re-apply for the position if she could return to work. During this phone call Plaintiff reiterated that she had been released to return to work without restrictions beginning July 12, 2012, which was only six days away.

14. During this time period, Defendant permitted a male employee in the maintenance department to take a temporary leave of absence so that he could work for another employer. Defendant held the male employee's position open for him without terminating his employment.

15. In order to substantiate her ability to perform the work required of the maintenance position, and in response to the Defendant's statements that she could not perform the work, Plaintiff underwent a functional capacity evaluation related specifically to the physical requirements of the maintenance worker position with the Defendant. Plaintiff notified Defendant that the functional capacity evaluation was scheduled to occur on August 1, 2012, and the Defendant provided the job requirements necessary to complete the evaluation. Plaintiff passed the functional capacity evaluation.

16. On August 27, 2012, Plaintiff's physician issued the results of the functional capacity evaluation clearing her to work in the maintenance position with Defendant without restrictions.

17. On August 28, 2012, Plaintiff submitted an application for employment with Defendant and attached the results of the functional capacity evaluation clearing her to work in the maintenance position without restrictions. Defendant had not hired any person to fill the position as of this date.

18. On August 29, 2012, Plaintiff called Defendant's Assistant General Manager Tim Clemons to confirm that Defendant received her application and functional capacity evaluation results showing that she could perform the functions of the maintenance position. During this conversation Mr. Clemons informed Plaintiff that Defendant could not consider her for the position because he interpreted the letter, which

4

specifically stated that she could perform all of the work required of the maintenance position without restrictions, as containing restrictions. Mr. Clemons stated that the list of specific physical requirements, which were provided by Defendant to the physician and listed on the evaluation, were restrictions on her ability to perform the job. Plaintiff immediately told him that he was misinterpreting the evaluation and that the items listed on the evaluation were the criteria for the evaluation that were specifically provided by Defendant. Mr. Clemons did not inform Plaintiff that Defendant had filled the position during this conversation.

19. On that same day, Plaintiff called her physician and asked that he send a letter to Defendant reiterating that she could perform the functions of the maintenance position without restrictions. Her physician faxed a letter to Defendant stating that she was cleared without restrictions that same day.

20. On August 30, 2012, Plaintiff called Tim Clemons to confirm that Defendant received the letter from her physician, and Mr. Clemons stated that Defendant received the letter. During this conversation Mr. Clemons informed Plaintiff that Defendant had extended an offer of employment to another applicant for the maintenance position.

21. Defendant eventually hired a male applicant who was less qualified than Plaintiff to perform the functions of the maintenance position.

### COUNT I – UNLAWFUL DISCRIMINATION
### (Violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112)

22. The Plaintiff incorporates by reference the allegations contained in paragraphs 1-21 as if specifically restated herein.

23. At all times relevant herein, Defendant was a "covered entity" within the meaning of 42 U.S.C. § 12112 and subject to the anti-discrimination provisions of Title I of the Americans with Disabilities Act.

24. At all times relevant herein, Defendant was an "employer" within the meaning of 42 U.S.C. § 12111(5).

25. At all times relevant herein, Plaintiff was an "employee" of the Defendant within the meaning of 42 U.S.C. §12115(4).

26. At all times relevant herein, Plaintiff was a person with a "disability" within the meaning of 42 U.S.C. § 12102.

27. At all times relevant herein, Plaintiff was a "qualified individual," within the meaning of 42 U.S.C. § 12111(8) in that she was able to perform the essential functions of her employment position with Defendant with or without a reasonable accommodation.

28. At all times relevant herein, Plaintiff's job performance met or exceeded Defendant's expectations and standards.

29. Defendant unlawfully discriminated against Plaintiff on the basis of her disability, in violation of the prohibitions contained in 42 U.S.C. § 12112, in the following manners:

   a. Limiting, segregating, or classifying the Plaintiff in a way that adversely affected her opportunities or status because of her disability;

   b. Utilizing standards, criteria, or methods of administration that had the effect of discrimination on the basis of Plaintiff's disability;

c. Not making reasonable accommodations to the known physical or mental limitations of Plaintiff;

d. Denying employment opportunities to the Plaintiff based on Defendant's need to make reasonable accommodations to the Plaintiff's physical or mental impairments;

e. Using qualification standards, employment tests, or other selection criteria that screened out the Plaintiff as an employee; and

f. Such other manners as the evidence may show at trial.

30. Defendant's unlawful actions herein were committed with malice or reckless indifference to Plaintiff's federally protected rights.

31. As a result of Defendant's unlawful discrimination, Plaintiff has suffered significant injuries and damages including loss of past and future income, lost benefits, emotional pain, suffering, mental anguish, loss of enjoyment of life, litigation expenses including attorneys' fees, and other injuries and damages.

## COUNT II – UNLAWFUL DISCRIMINATION
### (Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2)

32. The Plaintiff incorporates by reference the allegations contained in paragraphs 1-31 as if specifically restated herein.

33. At all times relevant herein, Defendant was an "employer" within the definition of that term in 42 U.S.C.§ 2000e in that Defendant is a person engaged in an industry affecting commerce and has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

34. At all times relevant herein, Plaintiff was an "employee" of the Defendant within the definition of that term in 42 U.S.C. § 2000e.

35. At all times relevant herein, Plaintiff's job performance met or exceeded Defendant's expectations and standards.

36. Defendant terminated Plaintiff's employment because of her sex.

37. Defendant's stated reason for terminating Plaintiff—that Defendant needed to fill the position immediately—was a pretext.

38. Defendant did not terminate the employment of comparable male employees who were on a leave of absence from work.

39. In terminating Plaintiff's employment, Defendant deviated from its personnel policies and practices.

40. Defendant refused to hire Plaintiff because of her sex, and hired a less qualified male applicant.

41. Defendant acted unlawfully in violation of 42 U.S.C. § 2000e-2 by discharging Plaintiff, and otherwise discriminating against Plaintiff with respect to the terms, conditions and privileges of employment because of Plaintiff's sex.

42. Defendant's unlawful actions herein were committed with malice or reckless indifference to Plaintiff's federally protected rights.

43. As a result of Defendant's unlawful discrimination, Plaintiff has suffered significant injuries and damages including loss of past and future income, lost benefits, emotional pain, suffering, mental anguish, loss of enjoyment of life, litigation expenses including attorneys' fees, and other injuries and damages.

### COUNT III – UNLAWFUL RETALIATION
(Violation of the Virginia Workers' Compensation Act, Va. Code. § 65.2-308)

44. The Plaintiff incorporates by reference the allegations contained in paragraphs 1-43 as if specifically restated herein.

45. Plaintiff filed and received Workers' Compensation benefits as a result of a workplace injury that occurred during her employment with the Defendant.

46. Defendant wrongfully discharged Plaintiff because Plaintiff filed a claim under the Virginia Workers' Compensation Act.

47. As a result of Defendant's unlawful retaliation, Plaintiff has suffered significant injuries and damages including loss of past and future income, lost benefits, emotional pain, suffering, mental anguish, loss of enjoyment of life, litigation expenses including attorneys' fees, and other injuries and damages.

## Prayer for Relief

WHEREFORE, Plaintiff Betty Pritchette respectfully requests that this Court enter judgment against Defendant Rapidan Service Authority and enter an Order awarding the following relief:

a. Actual and compensatory damages against Rapidan Service Authority for violating federal and state statutes enumerated herein;

b. Reinstatement of Plaintiff to her employment position with Rapidan Service Authority;

c. Front pay;

d. Back pay;

e. Punitive damages;

f. An award of reasonable attorneys' fees and costs, including expert witness fees; and

g. Such other and further relief as this Court may deem just.

**PLAINTIFF REQUESTS TRIAL BY JURY.**

Respectfully submitted,

BETTY PRITCHETTE

By /s/ William C. Tucker

William C. Tucker (VSB # 40754)
Tucker Law Firm, PLC
690 Berkmar Circle
Charlottesville, Virginia 22902
(434) 978-0100 *Phone*
(434) 978-0101 *Fax*
bill.tucker@tuckerlawplc.com